IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-01577-MSK-KLM

JAMIE D. HETFIELD,

    Plaintiff,

v.

COMMUNITY HOSPITAL ASSOCIATION, d/b/a BOULDER COMMUNITY HOSPITAL,

    Defendant.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion for Summary Judgment **(#18)**, to which Plaintiff responded **(#21)**, and Defendant replied **(#22)**. Having considered the same, the Court

**FINDS** and **CONCLUDES** that

### I.   Jurisdiction

This Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

### II.   Issue Presented

This case arises out of Plaintiff Jamie D. Hetfield's employment with Defendant Boulder Community Hospital ("BCH"). Ms. Hetfield brings two claims against BCH: (1) violation of the Americans with Disabilities Act ("ADA"); and (2) breach of contract. In the current motion, BCH moves for summary judgment on both of Ms. Hetfield's claims arguing that genuine issues of material fact do not exist as to each element of the claims.

### III.   Material Facts

Having reviewed all of the parties' submissions, and having construed any disputed fact most favorably to the non-movant, the Court finds the material facts to be as follows.

Ms. Hetfield suffers from a cardiac condition and a condition that results in intermittent small strokes. Prior to beginning her employment with BCH in the Family Medical Associates Clinic ("FMA"), Ms. Hetfield notified her supervisor, Andrew Currie, and a FMA physician about her medical conditions.

Immediately after she began work, Ms. Hetfield began having problems with two subordinate employees in the FMA. Ms. Hetfield alleges that these employees were making fun of her and the way she dressed, insulting her, and telling other employees that they were going to get her fired. Ms. Hetfield reported the issue to Mr. Currie and requested the offending employees be fired. The employees were not fired, but were verbally and formally reprimanded.

Nevertheless, based on the actions of these employees, Ms. Hetfield sought transfer to another department at BCH. BCH policy prohibited transfers until an employee had been employed for six months. However, according to Ms. Hetfield, Liz Schoofs in the Human Resources Department told her that an exception would be made to this policy for Ms. Hetfield's requested transfer. Therefore, Ms. Hetfield began looking for openings elsewhere in the hospital.

Prior to any transfer, however, Ms. Hetfield suffered a stroke and missed five or six days of work. She was limited to a reduced work schedule for two weeks upon her return. Mr. Currie was advised of the underlying medical reasons behind both the absences and the reduced schedule and approved the reduced schedule. However, at some point Mr. Currie allegedly told

Ms. Hetfield that he could not have her sitting in the clinic while her "face is dropping", apparently referring to a side effect of her strokes.

When an opening in the orthopedic/neurology department ("ortho/neuro") became available, Ms. Hetfield submitted an application to transfer into the position. Eventually, Adrienne Abbot, the director of the ortho/neuro department, informed Ms. Hetfield that she would approve her transfer to the ortho/neuro department and the two discussed starting dates. Ms. Hetfield submitted a transfer request, but it was denied pursuant to BCH's policy regarding transfers for employees who had been employed with BCH for less than six months. During a subsequent conversation with Ms. Hetfield, Ms. Abbot stated that if Ms. Hetfield would resign from the FMA, she would hire Ms. Hetfield as a new hire, thereby circumventing the hospital's prohibition of transfers for employees employed less than six months. Ms. Hetfield agreed to the plan and tendered her resignation to Mr. Currie.

Ms. Abbot, however, did not hire Ms. Hetfield. She explained in an email to Ms. Hetfield that this was because of Ms. Hetfield's previous "attendance issues", of which she had been informed of by Mr. Currie. Ms. Hetfield then met with Ms. Abbot in person and told her that any attendance issues were medically caused and not due to a lack of work ethic. Ms. Abbot advised Ms. Hetfield to see Human Resources about the issue, but did not change her mind about hiring Ms. Hetfield.

Ms. Hetfield then applied for a case manager position with BCH. Ms. Hetfield was not hired for this position due to lack of qualifications. As a result, Ms. Hetfield's resignation became effective without her having obtained employment elsewhere in the hospital.

### IV.   Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the moving party does not have the burden of proof at trial, it may point to an absence of sufficient evidence to establish the claim that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim, the claim must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### V. Analysis

A. Claim 1: Violation of the ADA

The ADA prohibits discrimination against any individual with a disability based on that disability. *See* 42 U.S.C. § 12112(a). Ms. Hetfield's ADA claims are analyzed under the familiar *McDonnell-Douglas* framework for employment discrimination cases, which places the initial burden on a plaintiff to establish a *prima facie* case of discrimination. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000) (discussing *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason" for its employment action. If the defendant presents such a reason, the plaintiff bears the ultimate burden of demonstrating that the defendant's proffered reasons were merely pretext for unlawful discrimination.

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate three elements: (1) the plaintiff is a disabled person as defined by the ADA; (2) the plaintiff is qualified, with or without reasonable accommodation, to perform the essential function of the job at issue; (3) the plaintiff suffered an adverse employment action under circumstances that give rise to an inference of discrimination. *See MacKenzie v. Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005); *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1259 (10th Cir. 2001). For purposes of the current motion, BCH does not dispute that Ms. Hetfield is a disabled person under the ADA nor that she was qualified to serve in any of the nursing positions she either held or for which she applied. Instead, it challenges Ms. Hetfield's ability to demonstrate that she suffered an adverse employment action under circumstances giving rise to

an inference of discrimination.

Ms. Hetfield proposes three alternative showings: (1) that she was terminated when she was "duped" into resigning her position in the FMA with the promise of being hired in a new position in the ortho/neuro department but was not subsequently rehired;[1] (2) that she was constructively discharged from the FMA by the insulting and harassing behavior of the subordinate employees; and (3) that BCH failed to hire her as a case manager.

As to the first theory, either termination or failure to hire can be an adverse employment action. *See Dick v. Phone Directories Co.*, 397 F.3d 1256, 1268 (10th Cir. 2005); *Garrison v. Gambro, Inc.*, 428 F.3d 933, 937 (10th Cir. 2005). With respect to establishing an "inference of discrimination", Ms. Hetfield has presented evidence that Mr. Currie knew about her medical condition; that Mr. Currie made at least one comment regarding her condition, *i.e.*, her dropping face; that her absences from work and reduced schedule were due to her medical condition; that Mr. Currie told Ms. Abbot about Ms. Hetfield's medical condition; and that Ms. Abbot stuck with her decision not to hire Ms. Hetfield based on Ms. Hetfield's absenteeism even after learning that the absences were based on a disability. Given the foregoing, the Court concludes that Ms. Hetfield has met her burden of demonstrating a *prima facie* case for failure to hire.

BCH counters by articulating a legitimate non-discriminatory reason for the failure to hire—Ms. Hetfield's history of absenteeism. *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997). With this explanation, BCH has carried its burden. In response it is Ms. Hetfield's burden to demonstrate that the explanation is merely pretext for discrimination by

---

[1] The Court construes Ms. Hetfield's theories of termination and failure to hire in the ortho/neuro department theory as coterminous because they are both ultimately based on BCH's decision not to hire Ms. Hetfield in the ortho/neuro department.

showing weaknesses, implausibilities, inconsistencies, or contradictions in the explanation such that a reasonable juror could find them unworthy of credence. *See id.* at 1323.

Ms. Hetfield contests Mr. Currie's computation of her absences arguing that the computerized "Kronos" system does not accurately reflect the time that she spent working outside the of the department in other departments or at community outreach events. Furthermore, she contends that the majority of her absences were a direct result of her disability, that Mr. Currie knew this (and in fact approved her reduced work schedule), but omitted this information when he reported her attendance record to Ms. Abbot. Ms. Hetfield also contends that she informed Ms. Abbot about her disability and the underlying cause of her absences, but that Ms. Abbot did not change her mind about hiring Ms. Hetfield in the ortho/neuro department. This is a sufficient showing of pretext at this stage of this case.[2]  Thus, a trial is required on the ADA claim.

With respect to the alternative theories, the factual evidence supporting these claims is the same or similar to that supporting the resignation theory discussed *supra*. Thus, there is no utility in addressing these alternative theories on a motion for summary judgment as the Court has already determined that a trial is necessary on Ms. Hetfield's ADA claim. To the extent that the evidence differs and BCH still contends that there is insufficient evidence supporting any theory or claim, it may address the issue at trial pursuant to Fed. R. Civ. P. 50.

B.   Claim 2: Breach of Contract

In Colorado, to prove a breach of contract, a party must demonstrate: (1) the existence of

---

[2] Notably, BCH is not challenging that Ms. Hetfield's absences rendered her unqualified for her desired job as they concede for purposes of this motion that she was qualified for all relevant jobs.

a contract; (2) substantial performance by the plaintiff; (3) failure to perform by the defendant; and (4) resulting damages to the plaintiff. *See Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Here, BCH challenges Ms. Hetfield's ability to prove the first element, existence of a contract. Again, the evidence pertinent to this claim is the same as that which will be used to determine the ADA claim. Thus, the determination of this claim can and should be made at trial.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment **(#18)** is **DENIED**.

Dated this 6th day of October, 2009

                **BY THE COURT:**

                */s/ Marcia S. Krieger*

                Marcia S. Krieger
                United States District Judge